Yitzchak Zelman, Esq.
California Bar No. 350053
MARCUS & ZELMAN, LLC
701 Cookman Ave, Suite 300
Asbury Park, NJ 07712
(732) 695-3282
yzelman@marcuszelman.com
*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JASON PRICE, | Case No.: |
| Plaintiff, | |
| v. | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| CHECKR, INC., | |
| Defendant. | |

## COMPLAINT

Plaintiff Jason Price (formerly Jason Kiederling) ("Plaintiff") brings this action on an individual basis, seeking statutory and other damages against Defendant Checkr, Inc.

("Checkr") and alleges, based upon Plaintiff's personal knowledge, the investigation of counsel, and upon information and belief, as follows:

### PRELIMINARY STATEMENT

1. This is an action to recover damages for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq*.

2. The FCRA is a federal statute designed to protect consumers from the harmful effects of inaccurate information reported in consumer reports (commonly referred to as "credit reports"). Thus, Congress enshrined the principles of "fair and accurate credit reporting" and the "need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness" in the very first provision of the FCRA. *See* 15 U.S.C. § 1681a.

3. To that end, the FCRA imposes the following twin duty on consumer reporting agencies: (i) consumer reporting agencies must devise and implement reasonable procedures to ensure the "maximum possible accuracy" of information contained in consumer reports; and (ii) consumer reporting agencies must reinvestigate the facts and circumstances surrounding a consumer's dispute and timely correct any inaccuracies.

4. The FCRA provides consumers with a private right of actions against consumer reporting agencies that willfully or negligently fail to comply with their statutory obligations under the FCRA.

5. Defendant Checkr has produced and sold consumer reports concerning Plaintiff's background that wrongfully and/or misleandingly reported Plaintiff's driving history by reporting that Plaintiff did not have a valid license and had a commercial driving license ("CDL") suspension. However, Plaintiff simply moved states from Florida to California and so did not renew his Florida CDL, but had a valid California driver's license.

6. As a result of Checkr's wrongful reporting, Plaintiff was damaged by, without limitation, loss of employment, suffering harm to his employment qualifications, loss of income, and considerable stress and anguish.

## PARTIES

7. Plaintiff is a natural person and resident of the State of California and qualifies as a "consumer" as defined and protected by the FCRA.

8. Defendant Checkr, Inc. is a "consumer reporting agency" as that term is defined under 15 U.S.C. § 1681a(f), as it "regularly engages in whole or in part in the practice of assembling or evaluating credit information or other information on consumers for the purpose of furnishing consumer reports to third parties" in exchange for monetary compensation, by means of interstate commerce. Defendant Checkr is a Delaware corporation that maintains its primary place of business at 1 Montgomery Street, San Francisco, California 94104.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p. Defendant has its primary place of business in the State of California, regularly conducts business within the State of California, and violated Plaintiff's rights under the FCRA in the State of California as alleged more fully below.

10. Venue is proper in this District under 28 U.S.C. 1391(b) because Plaintiff resides in this District, Defendant conduct regular business in this District, and communications giving rise to this action occurred in this District.

## FACTUAL ALLEGATIONS

11. Prior to June of 2023, Plaintiff worked as a driver-partner for the rideshare apps Doordash and Grubhub.

12. On or around June 6, 2023, Plaintiff received an email from Doordash indicating that he was being removed from employment due to the results of a consumer report provided to Doordash by Defendant.

13. The email indicated that Plaintiff was ineligible for employment with Doordash due to the reported items "FAILED TO FILE MED CERT/DISABILITY INFO" and "Candidate must have a valid driver license".

14. Indeed, the report provided by Defendant to Doordash, dated May 25, 2023, designates Plaintiff's employment consideration status as "consider". Upon information and belief, the basis for this designation is based on the result from the report's "Motor Vehicle Report" section.

15. The report lists Plaintiff's CDL from Florida with a license status of "Expired", and further listed a suspension on that license as of August 2, 2022.

16. Plaintiff was shocked and understandably confused, as he had moved from Florida to California and thereby, rather than paying fees to maintain his Florida CDL, he suspended the *commercial endorsement* on this license as he was no longer driving a tractor-trailer, as is common practice. Moreover, at this time, Plaintiff had a valid driver's license in the State of California.

17. Accordingly, on or about June 8, 2023, Plaintiff emailed Defendant disputing the accuracy of this information, providing evidence of his valid California license, and indicating that the date of the suspension on the Florida CDL was the date the Florida DMV was notified to terminate his license, as he had moved.

18. That same day, Defendant responded, indicating that it verified he had a valid California license and that "A Previous License status of EXPIRED (PASSENGER INHERITED FROM CDL) most commonly occurs when someone moves states, or as a result of typos. For example, the company you applied with, you, or Checkr may have entered incorrect information sometime before we tried running the Motor Vehicle Record (MVR)."

19. However, on or about June 15, 2023, another inaccurate report containing the same inaccurate and/or misleading information was provided by Defendant to Grubhub, another rideshare platform for which Plaintiff sought employment.

20. On or about June 20, 2023, Plaintiff again sent an email to Defendant disputing the accuracy of this information and providing verification of his valid California license.

21. On or about July 3, 2022, Defendant responded to Plaintiff's first dispute, purporting to have verified the information as "accurate". With this result, Defendant included a copy of a new report which continued to report his status as "consider" and, though it now reflected his valid California license, continued to misleadingly report the Florida CDL as a "suspension" of the license, rather than of his commercial endorsement, which only affected his ability to drive a commercial vehicle.

22. On or about July 21, 2023, Defendant responded to Plaintiff's second dispute, reiterating the same and continuing to list his status as "consider" based on the misleadingly reported Florida CDL information.

23. Upon information and belief, Defendant had all the information it needed to conduct a reasonable investigation in response to Plaintiff's disputes, but just failed to do so.

24. As a direct result of Defendant's inaccurate reporting and failure to reasonably investigate Plaintiff's disputes, Plaintiff has been damaged.

25. Because of the inaccurate and/or misleading information provided to Plaintiff's employers by Defendant, Plaintiff was denied employment with Doordash and Grubhub.

26. As a direct result, Plaintiff has suffered distress and mental anguish due to the frustration in losing out on this source of income and the damage to his reputation from having this inaccurate driver history information distributed, as if he is unfit to be behind the wheel.

27. It is patently inaccurate and/or materially misleading to report the suspension of a commercial endorsement as a suspension of a license, which would imply Plaintiff was unable to legally drive a vehicle, especially when Plaintiff had a valid license in California.

28. Upon information and belief, had Defendant not erroneously and inaccurately reported an inaccurate driver history on hos background report, Plaintiff would not have been denied his position with Doordash and Grubhub.

29. Upon information and belief, Defendant fails to maintain and employ reasonable procedures to assure maximum possible accuracy of the consumer information it provides to employers.

30. Upon information and belief, Defendant knowingly and willfully maintains deficient procedures because reporting more information is more profitable than reporting less and potentially leaving information off of a consumer report.

31. For example, upon information and belief, Defendant allowed a misleading and incomplete driving history to appear on Plaintiff's consumer report without first confirming the accuracy with the actual records, which are readily and publicly available.

32. Defendant regularly seeks out and procures driver history information with the intention of including it in the consumer reports it sells for profit.

33. Instead of employing reasonable procedures as required by the FCRA, Defendant blindly collects information from unreliable third-party vendors to repackage and sell in its own employment screening products.

34. Alternatively, upon information and belief, Defendant buys consumer information from third-party vendors that do not have reasonable procedures in place to ensure that the information they sell is of maximum possible accuracy

35. Defendant, a sophisticated employment screening consumer reporting agency, is aware that driver history information is often inaccurate, incomplete or misleading.

36. Upon information and belief, Defendant purchased Plaintiff's information from one or more third-party vendors that merely compile consumer data from various online sources without verifying its accuracy with actual court records.

37. Upon information and belief, none of Defendant's third-party vendors warrant the accuracy of the information they sell.

38. Upon information and belief, Defendant does not exercise due diligence in ensuring it is contracting with and/or utilizing reliable third-party vendors.

39. Upon information and belief, Defendant does not conduct periodic quality assurance audits to ensure that it is receiving reliable consumer information from its third-party vendors.

40. Upon information and belief, Defendant has been sued by consumers under the FCRA in the past for erroneously reporting inaccurate driver records.

41. Therefore, Defendant has notice that its procedures often result in the preparation of inaccurate consumer reports and dissemination of inaccurate consumer information.

42. Upon information and belief, Defendant knew that the furnisher or third-party vendor provides inaccurate consumer data with some regularity.

43. Upon information and belief, Defendant blindly relied on the information provided by the furnisher or third-party vendor despite having reason to know it may be unreliable.

44. Upon information and belief, Defendant does not maintain reasonable procedures to assure it reports consumer information with maximum possible accuracy because it would be more expensive to independently verify the accuracy of the information it includes in its consumer reports and ensure it is "maximally accurate" and not misleading.

45. It is wholly unreasonable for Defendant to maintain procedures that it knows often lead to inaccurate and misleading consumer reporting with grave consequences.

46. Despite knowing that its procedures are unreasonable, Defendant recklessly, knowingly, and/or negligently fails to employ procedures that assure that maximum possible accuracy of consumer information compiled and published in its consumer reports.

47. Upon information and belief, Defendant does not independently investigate the information it procures from third-party vendors before including it in consumers' background reports.

48. Instead, Defendant has unreasonably decided that it is entitled to rely completely on third-party vendors to ensure the information included in its consumer reports is accurate.

49. The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to prevent.

50. Defendant knows that its services are used to make significant consumer decisions.

51. Upon information and belief, Defendant know or should have known that employers make decisions on employment decisions on employment status based solely on the information contained in its consumer reports.

52. Upon information and belief, Defendant knew or should have known the negative impact that reporting a consumer's inaccurate and misleading driving history, such as failing to report a valid license and misleadingly reporting a CDL endorsement suspension as a license suspension, was likely to have on that consumer's employment status.

53. Upon information and belief, Defendant purchases public record information from third-party vendors.

54. Upon information and belief, those third-party vendors explicitly disclaim the accuracy of the information they provide to Defendant.

55. Upon information and belief, Defendant reports and publishes the information provided by the third-party vendors without verifying its accuracy.

56. Upon information and belief, Defendant knows or has reason to know that the third-party vendors it procures consumers' information from often provides inaccurate, misleading, and incomplete records.

57. Upon information and belief, Defendant reports and publishes unverified public records information without employing reasonable procedures to assure its accuracy because employing such procedures would cut into its profits.

58. At common law, Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

59. As a direct result of Defendant's conduct, Plaintiff was denied employment with Doordash and Grubhub.

60. As a direct result of Defendant's conduct, Plaintiff lost out on considerable income from Doordash and Grubhub.

61. As a further direct result of Defendant's conduct, Plaintiff suffered mental distress, including humiliation, embarrassment, and considerable stress from his loss in income.

62. As a direct result of Defendant's inaccurate and/or misleading reporting, Plaintiff has suffered actual damages including, but not limited to: job denial, loss of

income, wasted time, financial insecurity, defamatory harm to his reputation and emotional distress, including but not limited to, humiliation, embarrassment, stress, frustration, and mental anguish.

63. Defendant's violations of the FCRA were willful. Accordingly, Plaintiff is entitled to statutory, actual, and punitive damages under 15 U.S.C. § 1681n.

64. Additionally, Defendant's violations of the FCRA were negligent. Accordingly, Plaintiff is entitled to statutory and actual damages under 15 U.S.C. § 1781o.

65. In any event, Defendant is liable for Plaintiff's reasonable attorneys' fees and costs, pursuant to 15 U.S.C. §§ 1681n and 1681o.

## CAUSES OF ACTION

### COUNT I

### Violation of the FCRA, 15 U.S.C. § 1681e

66. Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

67. The FCRA imposes a duty on consumer reporting agencies to devise and implement procedures to ensure the "maximum possible accuracy" of consumer reports, as follows:

> Whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure ***maximum***

*possible accuracy* of the information concerning the individual about whom the report relates.

15 U.S.C. § 1581e(b) (emphasis added).

68.   Checkr violated § 1681e(b) because it failed to follow reasonable procedures to ensure the maximum possible accuracy of the information it attributed to Plaintiff in its consumer reports.

69.   Specifically, Checkr willfully, intentionally, recklessly, and/or negligently violated § 1681e(b) by inaccurately and/or misleadingly reporting driver history without his valid license and with a misleading "suspension".

70.   Checkr's misconduct was a direct and proximate cause of Plaintiff's injuries, as alleged herein.

71.   Checkr is therefore liable to Plaintiff for its willful and/or negligent failures to follow reasonable policies and procedures.

72.   As a result of Checkr's violations of 15 U.S.C. § 1681e(b), Plaintiff suffered statutory and actual damages as described herein and is entitled to recover actual and punitive damages under 15 U.S.C. §§ 1681n and 1681o.

## COUNT II
### Violation of the FCRA, 15 U.S.C. § 1681o

73.   Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

74. At all times pertinent herein, Defendant was a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(c).

75. The FCRA provides that:

"***if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer*** and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, ***the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file*** in accordance with paragraph(5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller." 15 U.S.C. § 1681i(a)(1)(a) (emphasis added)

76. In June and July of 2023, Plaintiff initiated disputes with Defendant requesting that they correct the inaccurate and misleading motor vehicle report information being reported on his consumer reports.

77. However, Defendant never adequately investigated the Plaintiff's dispute, as required by the FCRA.

78. Instead, Defendant, after either conducting no investigation or failing to conduct a reasonable investigation, continued to report this inaccurate and misleading information, something that any basic investigation would have prevented.

79. As a direct and proximate result of Defendant's refusal to conduct a reasonable investigation as mandated by the FCRA, Plaintiff has been harmed, as explained above.

80. Checkr's violations of the §1681i were willful. Therefore, Checkr is liable to Plaintiff for actual, statutory, and punitive damages in an amount to be determined at trial, pursuant to 15 U.S.C. § 1681n.

81. Additionally, Checkr's violations of § 1681i were at least negligent. Therefore, Checkr is liable to Plaintiff for statutory and actual damages, pursuant to 15 U.S.C. § 1681o

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands a judgment:

i. Awarding Plaintiff statutory money damages, actual damages and punitive damages pursuant to 15 U.S.C. §§ 1681n and/or 1681o, including pre-judgment and post-judgment interest;

ii. Awarding attorneys' fees and costs as required by 15 U.S.C. §§ 1681n and/or 1681o, and other relief; and

iii. Awarding any other such relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Dated: September 19, 2023     By:   */s/ Yitzchak Zelman*

Yitzchak Zelman, Esq.
MARCUS & ZELMAN, LLC
701 Cookman Avenue, Suite 300
Asbury Park, NJ 07712
Tel: (732) 695-3282

Email: yzelman@marcuszelman.com
*Attorneys for Plaintiff*